UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**NAOMI FLEMING o/b/o CTF**,  Case No. 1:11 CV 2410

    Plaintiff,  Magistrate Judge James R. Knepp II

v.  MEMORANDUM OPINION AND ORDER

**COMMISSIONER OF SOCIAL SECURITY**,

    Defendant.

### INTRODUCTION

Plaintiff Naomi Fleming, on behalf of minor child CTF, filed a Complaint (Doc. 1) against the Commissioner of Social Security, seeking judicial review of the Commissioner's decision to deny supplemental security income (SSI). The district court has jurisdiction under 42 U.S.C. § 405(g). The parties consented to the exercise of jurisdiction by the undersigned in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 17). For the reasons below, the Court affirms the Commissioner's decision denying benefits.

### PROCEDURAL BACKGROUND

CTF was born on January 22, 2000. (Tr. 61). In 2003, Plaintiff filed for SSI benefits on CTF's behalf due to T-cell deficiency, a history of seizure disorder, and thyroid problems. (Tr. 85). In a determination dated November 11, 2003, CTF was found disabled as of June 1, 2003. (Tr. 15). On June 9, 2005, the Social Security Administration (SSA) determined CTF's health had improved and sent Plaintiff a notice of disability cessation. (Tr. 38-41). Plaintiff requested reconsideration of CTF's disability cessation. (Tr. 56). Pending reconsideration, Plaintiff opted to continue CTF's benefits and acknowledged she might have to repay those benefits depending on the reconsideration outcome. (Tr. 59). Plaintiff and CTF moved to Georgia sometime in 2005 and the reconsideration

process ceased until she moved back to Ohio in 2007. (Tr. 101). According to SSA documents, the reconsideration decision was "apparently . . . lost" in Georgia. (Tr. 103). In 2007, a late filing for reconsideration was permitted due to good cause. (Tr. 103). However, on March 20, 2009, it was determined Plaintiff, then nine years old, was no longer disabled as of June 1, 2005. (Tr. 15). After a hearing with the state agency, this determination was upheld on reconsideration. (Tr. 15). Plaintiff timely requested a hearing before an administrative law judge (ALJ). (Tr. 93). Plaintiff and CTF appeared and testified at a hearing held October 12, 2010. (Tr. 15). Although informed of the right to representation, Plaintiff chose to proceed without the assistance of an attorney. (Tr. 15). On January 24, 2011, the ALJ denied the reconsideration request, finding CTF's disability ended as of June 1, 2005. (Tr. 15-28). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1); 20 C.F.R. § 416.1481. Plaintiff now seeks judicial review of the ALJ's decision to cease CTF's disability benefits pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). (Doc. 1).

Plaintiff filed a subsequent application to obtain SSI benefits for CTF on April 21, 2011. (Doc. 16, at 2).On January 28, 2012, CTF was found disabled due to autism-like symptoms and ADHD (Doc. 18, at 2), with an onset date of April 24, 2011 (Doc. 16, at 2). Before the Court remains whether the ALJ's decision that CTF was not disabled between June 1, 2005 and January 24, 2011 was supported by substantial evidence in the record.

### FACTUAL BACKGROUND

*Medical Evidence*

On May 12, 2005, CTF met with internist and pediatrician Dr. Todd Hochman for a consultive examination. (Tr. 118). Dr. Hochman reviewed CTF's medical records and found he

2

suffered from polyglandular deficiency, hypothyroidism, and chronic diarrhea. (Tr. 118). An EEG revealed normal activity, and Dr. Hochman noted CTF no longer suffered from seizures. (Tr. 118). On examination, Dr. Hochman concluded CTF was able to acquire and use information appropriately, interact and relate appropriately, and had no difficultly following one-to-three step instructions. (Tr. 121). He noted CTF was "somewhat hyperactive" and would benefit from a formal ADHD evaluation. (Tr. 121).

Treating physician Dr. Robson's treatment notes from August 6, 2007 indicate CTF suffered from chronic T-cell deficiency, chronic diarrhea, and hypothyroid, but he was developing and growing normally and maintained good school grades. (Tr. 137). Dr. Robson recommended CTF see neurology specialist Dr. Moodly for clumsiness and dexterity issues. (Tr. 137).

In March 2008, state agency physician Malika Haque, M.D. assessed CTF's physical conditions as stable and not severe but recommended a psychiatric evaluation based on Plaintiff's reports that CTF was having "behavioral and attention problems." (Tr. 140). On April 9, 2008, Dr. Haque again found CTF's physical impairments were not severe and he had no marked limitations. (Tr. 149-54).

On March 17, 2008, state disability agent Ed Cush spoke with Plaintiff about CTF's condition. (Tr. 108). Plaintiff reported CTF was in regular classes at school and was being treated by Dr. Robson for ADHD, but not taking ADHD medication. (Tr. 108).

On March 28, 2008, CTF met with Dr. Konieczny for a psychological evaluation. (Tr. 141). Dr. Konieczny noted CTF's diagnoses and Plaintiff's reports that CTF was hyperactive, restless, showed poor attention, and had trouble concentrating. (Tr. 142). He noted CTF obtained above average to superior grades, had not been involved in any disciplinary difficulties, and was generally

3

compliant in home and school settings. (Tr. 142). On examination, CTF was neatly groomed and pleasant throughout the interview. (Tr. 142). Dr. Konieczny concluded CTF showed no indications of mood swings or mood disturbance and his ability to concentrate and attend to task appeared adequate. (Tr. 142). CTF received a scaled IQ score of 82, which placed him in the low-average range of intellectual functioning. (Tr. 143). CTF showed relative deficits in the area of processing speed and marked deficits in the areas of speed and accuracy in learning and writing symbols. (Tr. 143). However, he showed relative strength in the areas of attention and concentration, auditory imagery, and retentiveness. (Tr. 143). Dr. Konieczny concluded CTF suffered from a learning disorder, not otherwise specified, and nocturnal enuresis. (Tr. 144). He noted CTF's capabilities were adequate in the areas of communications, motor skills, social, emotional, personal, behavioral, concentration, and persistence. (Tr. 144). Dr. Konieczny opined CTF's Global Assessment Functioning (GAF) score was 66[1].

In January 2009, Plaintiff and CTF moved back to Georgia and CTF began treatment with Dr. Simmons at Oakhurst Medical Center. In November 2009, Dr. Simmons determined CTF would benefit from seeing several specialists. (Tr. 201-05). Dr. Simmons referred CTF to Drs. Janass and Silk for T-cell deficiency and polyglandular syndrome (Tr. 201, 203), Dr. Kugathesar for chronic diarrhea (Tr. 202), Dr. Hansen for hypothyroidism (Tr. 204), and a physician at the Emory Clinic for ADHD and autism (Tr. 205). The records do not indicate whether CTF saw these physicians.

---

2. The GAF scale represents a "clinician's judgment" of an individual's symptom severity or level of functioning. American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders*, 32–33 (4th ed., Text Rev. 2000) (*DSM-IV-TR*). A higher number represents a higher level of functioning. *Id.* A GAF score between 61 and 70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning . . .but generally functioning pretty well . . . ." *Id.* at 34.

*School Records*

CTF's school records from Dekalb County School System in Lithonia, Georgia, dated March 26, 2010, indicate decreased attendance, attention, strength, and physical functioning, but normal alertness, vitality, participation, and communication. (Tr. 182). CTF did not require "medically necessary actions" during the school day, but school staff was aware of CTF's decreased attendance due to diarrhea and vomiting. (Tr. 183, 185).

School records from Cleveland Municipal School District in Cleveland, Ohio indicate CTF was suspended for fighting on three separate occasions – in February 2008, March 2009, and June 2009. (Tr. 188, 193, 195, 196). In April 2009, CTF was suspended for gambling on school premises. (Tr. 197).

*ALJ Hearing*

The ALJ hearing took place on October 12, 2010 in Georgia. (Tr. 221). Plaintiff and CTF appeared and testified before the ALJ without counsel, although they were informed by the ALJ of their right to be represented. (Tr. 223-24).

Plaintiff testified CTF has polyglandular syndrome which causes his organs to shut down. (Tyr. 227). Plaintiff also testified his bones were very brittle. (Tr. 227, 232). Plaintiff stated Dr. Simmons recently referred her to another doctor because they suspected CTF may have autism. (Tr. 228). She reported receiving "a whole heap of referrals" since moving back to Georgia from Ohio in January 2009. (Tr. 228-29). Plaintiff also testified CTF no longer suffered from seizures or wet his bed. (Tr. 235).

Plaintiff could not recall the names of certain doctors CTF had seen in Cleveland. (Tr. 231). Accordingly, the ALJ requested Plaintiff prepare a list of the doctors names at the end of the hearing

5

or by letter when she returned home. (Tr. 231). The record does not include a list or letter.

Concerning CTF's daily activities and schooling, Plaintiff testified he could brush his teeth, dress himself, and wash his face. (Tr. 233). Plaintiff testified CTF was doing fine academically but fixated on objects and rocked back and forth while making noises in the classroom. (Tr. 229). Plaintiff indicated the school planned to give him an assessment within a few months. (Tr. 229). Plaintiff testified CTF plays computer games and does "a lot" of crossword puzzles. (Tr. 234). She also stated CTF is not in special education but receives significant one-on-one time with his teachers. (Tr. 234).

*ALJ Decision*

On January 24, 2011, the ALJ issued an opinion finding CTF was no longer disabled as of June 1, 2005, because his impairments no longer met, equaled, or functionally equaled the criteria of any listed impairment. (Tr. 19, 27-28). He found CTF's comparison-point date (CPD) was November 11, 2003. (Tr. 18). At the time of his CPD, CTF had the following medically determinable impairments that functionally equaled a listed impairment: T-Cell deficiency, history of seizure disorder, hypothyroidism, polyglandular syndrome, learning disorder, and enuresis. (Tr. 18). However, the ALJ found medical improvement occurred as of June 1, 2005, and CTF's impairments no longer resulted in marked limitations in any of the six domains of functioning. (Tr. 22-27). The ALJ also found, as of May 2005, CTF had less than marked limitations in the areas of acquiring and using information, caring for himself, and health and physical well-being, but no limitations in the areas of attending and completing tasks, interacting and relating with others, and moving about and manipulating objects. (Tr. 22-27).

To support his determination, the ALJ noted Dr. Hochman's consultive examination which

confirmed CTF's diagnoses but demonstrated CTF showed no sign of developmental delay and had no problem following one-to-three step instructions. He noted the psychological evaluation with Dr. Konieczny which revealed CTF had a pleasant manner, responded readily, and was able to concentrate and attend to task. (Tr. 20-21). In sum, the ALJ found the evidence showed CTF's functioning had improved, he was growing and developing normally, and he no longer had frequent infections. (Tr. 19).

## STANDARD FOR DISABILITY

Eligibility for SSI is predicated on the existence of a disability. 42 U.S.C. § 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). In the case of a claimant under the age of 18, the Commissioner follows a three-step evaluation process – found at 20 C.F.R. § 416.924(a) – to determine if a claimant is disabled:

1. Is claimant engaged in a substantial gainful activity? If so, the claimant is not disabled regardless of their medical condition. If not, the analysis proceeds.

2. Does claimant have a medically determinable, severe impairment, or a combination of impairments that is severe? For an individual under the age of 18, an impairment is not severe if it is a slight abnormality or a combination of slight abnormalities which causes no more than minimal functional limitations. If there is no such impairment, the claimant is not disabled. If there is, the analysis proceeds.

3. Does the severe impairment meet, medically equal, or functionally equal the criteria of one of the listed impairments? If so, the claimant is disabled. If not, the claimant is not disabled.

To determine, under step three of the analysis, whether an impairment or combination of

impairments functionally equals a listed impairment, the minor claimant's functioning is assessed in six different functional domains. 20 C.F.R. § 416.926a(b)(1). This approach, called the "whole child" approach, accounts for all the effects of a child's impairments singly and in combination. SSR 09-1P, 2009 WL 396031, at *2. If the impairment results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain of functioning, then the impairment is of listing-level severity and therefore functionally equal to a listed impairment. 20 C.F.R. § 416.926a(a). A "marked" limitation is one that is more than moderate but less than extreme, and interferes "seriously" with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(I). An "extreme" limitation is one that interferes "very seriously" with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(I). The six functionality domains to be assessed are: (I) acquiring and using information, (ii) attending and completing tasks, (iii) interacting and relating with others, (iv) moving about and manipulating objects, (v) caring for yourself, and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

### STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474

F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## DISCUSSION

Plaintiff alleges the ALJ erred by not fully developing the record with: 1) a school report Plaintiff testified was scheduled to occur after the ALJ hearing; and 2) specialists' records from Dr. Simmons' referrals. (Doc. 16, at 9). Plaintiff further alleges the ALJ erred by not having a medical expert "present at the hearing to assist in defining what CTF's problems entailed." (Doc. 16, at 9).

***Duty to Develop Record***

An ALJ has a duty to develop the record because of the non-adversarial nature of Social Security benefits proceedings. *See Heckler v. Campbell*, 461 U.S. 458, 470 (1983). The Sixth Circuit has emphasized that this duty is particularly important when a claimant is acting *pro se*. *See Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983). In *Lashley*, the Sixth Circuit explained:

> [A]n [ALJ's] . . . basic obligation to develop a full and fair record rises to a special duty when an unrepresented claimant unfamiliar with hearing procedures appears before him. . . . To satisfy this special duty[,] the [ALJ] . . . must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts. . . . He must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.

*Id.* at 1051-52. The duty to develop the record, however, is balanced with the fact that "[t]he burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (citing 20 C.F.R. §§ 416.912, 416.913(d)).

Although the Court must "scrutinize the record with care" where the claimant appears before the ALJ without counsel, the lack of counsel does not automatically result in reversal. *Lashley*, 708 F.2d at 1052. In determining whether it is necessary to remand for clarification of the record, the Court is guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice. *See Brown v. Shalala*, 44 F. 3d 931, 935-36 (11th Cir. 1995).

Plaintiff is correct that Dr. Simmons referred CTF to a series of specialists. However, an ALJ is required to re-contact a treating physician only when the information received is inadequate to reach a determination on claimant's disability status. *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 274-75 (6th Cir. 2010). Here, Dr. Simmons' referrals merely requested evaluations for impairments which were already assessed and documented in the record. Specifically, Dr. Simmons referred CTF to specialists for polyglandular syndrome, T-cell deficiency, diarrhea, and hypothyroidism, but Dr. Hochman evaluated CTF's physical capacity accounting for these conditions and treating physician Dr. Robson provided treatment notes regarding the same. Further, while Dr. Simmons referred CTF to specialists for ADHD and autism, the record included Dr. Konieczny's psychiatric evaluation and CTF's school records from Georgia and Ohio.  As Plaintiff points out, the ALJ made every attempt "to fulfill his [] role of insuring [] there were all the records as required by statute." (Doc. 16, at 8). Because there was adequate evidence in the record for the ALJ to make a determination without Dr. Simmons' referrals, the ALJ did not err.

In addition, Plaintiff contends the ALJ erred because he made a determination without a particular school evaluation. But that school evaluation did not exist at the time of the ALJ hearing, and the Court can only review an ALJ's decision based on the evidence that was before him. Plaintiff fails to acknowledge "[t]he burden of providing a complete record . . . rests with the

10

claimant." *Landsaw*, 803 F.2d at 214. The ALJ is not required to wait for the report of a tentatively scheduled evaluation in the future before he can make a disability determination. In any event, CTF was not prejudiced without the report because the record included agency reports and school records documenting CTF's conditions and behavior in a school setting. Therefore, no evidentiary gap or unfairness occurred here; rather, there was adequate and sufficient evidence in the record for the ALJ to make a disability determination.

Plaintiff incorrectly suggests the Court should find CTF disabled because he was subsequently found disabled as of April 24, 2011, "based on the exact same conditions", and the additional evidence neglected to be included above would have changed the outcome. (Doc. 16, at 9). Plaintiff's suggestion that the "missing" evidence (which the Court previously explained was not necessary) would have changed the outcome is speculation. The fact that a subsequent application was approved does nothing to demonstrate the instant determination was not supported by substantial evidence, which is the standard the Court must apply. Moreover, under the Commissioner's regulations, each application adjudicates a discrete time period – the applications "effective filing period" – which ends when the hearing decision is issued. 20 C.F.R. § 404.620(a).

### *Medical Expert*

The "ALJ has the ultimate responsibility for ensuring that every claimant receives a full and fair hearing", but "[h]ow much evidence to gather is a subject on which district courts must respect the Secretary's reasoned judgment." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 189 (6th Cir. 2009) (quoting *Lashley v. Sec'y of* H.H.S., 708 F.2d 1048, 1051 (6th Cir. 1983); *Kendrick v. Shalala*, 998 F.2d 455, 458 (7th Cir. 1993)). The decision to solicit medical expert testimony is well within the discretion of the ALJ. The Sixth Circuit has noted, "20 C.F.R. §§ 404.1527(f)(2)(iii) and

11

416.927(f)(2)(iii) provide discretion rather than a mandate to the ALJ to decide whether to solicit medical expert testimony, stating that ALJs 'may . . . ask for and consider opinions from medical experts on the nature and severity of [a claimant's] impairments.'" *Simpson*, 344 F. App'x at 189. Furthermore, judicial review of the decision not to solicit medical expert testimony hinges on whether the testimony was necessary, not on whether it would have been merely helpful. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (holding the "full inquiry" described by 20 C.F.R. § 416.444 only requires a consultative examination when it is *necessary* to enable the ALJ to make the disability decision).

Plaintiff claims the ALJ should have employed a medical expert because she and CTF were unrepresented and the conditions were unusual and not easily defined. Plaintiff further asserts the ALJ just described scripted "categories" rather than doctors' findings. This is simply not the case.

The ALJ talked about CTF's conditions at length in his decision. Specifically, he talked about emergency room visits dating back to CTF's infancy, his initial diagnoses, Dr. Hochman's report and results, Dr. Konieczny's report and results, school records from Georgia and Ohio, treating physician treatment notes, and Plaintiff's testimony regarding CTF's conditions. (Tr. 20-21). These pieces of evidence thoroughly detailed CTF's conditions and were easily understood. There was no necessity for the ALJ to employ a medical expert, and it was well within his discretion to decide against doing so.

## CONCLUSION

Following review of the arguments presented, the record, and applicable law, the Court finds

the ALJ's decision supported by substantial evidence. Therefore, the Court affirms the Commissioner's decision terminating benefits.

IT IS SO ORDERED.

s/James R. Knepp, II
United States Magistrate Judge